**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF MISSOURI, *ex rel.* | ) | |
| *Andrew Bailey, Attorney General of Missouri,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:25-CV-00165-JSD |
| | ) | |
| v. | ) | |
| | ) | |
| STARBUCKS CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT STARBUCKS CORP.'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION**
**UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND (2)**
**AND FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 1

   I.   Starbucks' Aspirational Representation Goals ......................................... 2

   II.   Starbucks' Senior Executive Incentive Compensation Plans ................. 2

   III.  Starbucks' Mentorship Programs and Partner Networks ..................... 3

   IV.  Starbucks' Participation in the DBAA ................................................... 4

ARGUMENT ....................................................................................................... 4

   I.   This Court Lacks Personal Jurisdiction Over Starbucks ....................... 4

   II. The Attorney General Lacks Article III Standing to Pursue the Alleged Federal Claims ...... 6

   III.  The Complaint Fails to State a Claim Upon Which Relief Can Be Granted ...................... 8

      A.  The Attorney General Is Not Authorized to Bring Title VII Claims ........................... 8

      B.  The Attorney General Is Not Authorized to Bring § 1981 Claims ............................. 9

      C.  The MHRA Claims Are Not Within the Scope of the Attorney General's Statutory Authority ................................................................. 10

      D. The "Counts" in the Complaint Fail to State Any Facially Plausible Claim ...................................................................... 12

         *1.  The Attorney General Has Not Alleged Any Harm to an Identifiable Employment Condition or Opportunity. (Counts 1,2,6,7,10)* ........................... 12

         *2.  The Attorney General Has Not Alleged an Unlawful Training Program (Counts 4-5)* ............................................................. 14

         *3.  The Attorney General Has Not Alleged an Unlawful Publication (Counts 8-9)* ............................................................. 15

         *4.  The Complaint Fails to Allege an MHRA Aiding and Abetting Claim (Count 3)* .......................................................... 15

i

CONCLUSION ............................................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*,
    458 U.S. 592 (1982) ................................................................................ 6, 7

*Arkansas Right to Life State Pol. Action Comm. v. Butler*,
    146 F.3d 558 (8th Cir. 1998)..................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 8

*Barrett v. Cole Cnty*,
    687 S.W.3d 685 (Mo. App. 2024)............................................................ 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) .......................................................................... 8

*BNSF Ry. Co. v. Tyrrell*,
    581 U.S. 402 (2017) .................................................................................. 5

*Bristol-Myers Squibb Co. v. Superior Court*,
    582 U.S. 255 (2017) .............................................................................. 5, 6

*Brothers. & Sisters in Christ, LLC v. Zazzle, Inc.*,
    42 F.4th 948 (8th Cir. 2022)................................................................... 4, 5

*Clobes v. 3M Co.*,
    106 F.4th 803 (8th Cir. 2024)................................................................... 8

*Cole v. Group Health Plan, Inc.*,
    105 F.4th 1110 (8th Cir. 2024) ......................................................... 12, 13

*Collins v. Union Pac. R.R. Co.*,
    108 F.4th 1049 (8th Cir. 2024)............................................................... 13

*Comcast Corp. v. Nat'l Ass'n. of Afr. Am.-Owned Media*,
    589 U.S. 327 (2020) .................................................................................. 9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................... 5

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006) .......................................................................................... 9, 10

*Dzibela v. BlackRock Inc.*,
   2024 WL 4349813 (D.N.J. Sept. 30, 2024) .............................................................. 11

*EEOC v. AutoZone, Inc.*,
   860 F.3d 564 (7th Cir. 2017) .................................................................................. 13

*EEOC v. McDonnell Douglas Corp.*,
   191 F.3d 948 (8th Cir. 1999) .................................................................................. 11

*Fastpath, Inc. v. Arbela Techs. Corp.*,
   760 F.3d 816 (8th Cir. 2014) .................................................................................... 4

*FCS Advisors, LLC v. Missouri*,
   929 F.3d 618 (8th Cir. 2019) .................................................................................. 10

*Goodyear Dunlap Tires Operations v. Brown*,
   564 U.S. 915 (2011) .................................................................................................. 5

*Gregory v. Dillard's, Inc.*,
   565 F.3d 464 (8th Cir. 2009) .................................................................................. 14

*Harrison v Jefferson Parish Sch. Bd.*,
   78 F.4th 765 (5th Cir. 2023) ...................................................................................... 7

*Illig v. Union Elec. Co.*,
   652 F.3d 971 (8th Cir. 2011) ................................................................................. 2, 3

*Mallory v. Norfolk S. Ry. Co.*,
   600 U.S. 122 (2023) .................................................................................................. 5

*Mangold v. PECO Energy*,
   2021 WL 6072818 (E.D. Pa. Dec. 23, 2021) ........................................................... 12

*Matthews v. Harley-Davidson*,
   685 S.W.3d 360 (Mo. 2024) .................................................................................... 15

*McCormick v. Gasper*,
   2022 WL 16586621, *4 (6th Cir. Nov. 1, 2022) ...................................................... 11

*Miller v. Nippon Carbon Co.*,
   528 F.3d 1087 (8th Cir. 2008) ............................................................................... 4, 6

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017)..................................................................... 7

*Morgan v. United Parcel Serv.*,
   380 F.3d 459 (8th Cir. 2004)................................................................... 11

*Muldrow v. City of St. Louis, Missouri*,
   601 U.S. 346 (2024) ............................................................................... 13

*New York v. Holiday Inns, Inc.*,
   656 F. Supp. 675 (W.D.N.Y. 1984) ..................................................... 7, 8

*School of the Ozarks, Inc. v. Biden*,
   41 F.4th 992 (8th Cir. 2022) .................................................................... 6

*Smith v. General Motors*,
   2023 WL 1765207 (E.D. Mo. Feb. 3, 2023)........................................... 13

*State ex rel. Anheuser-Busch, LLC v. Moriarty*,
   589 S.W.3d 567 (Mo. 2019) ................................................................... 9

*State ex rel. Norfolk S. Ry. Co. v. Dolan*,
   512 S.W.3d 41 (Mo. 2017) ...................................................................... 5

*Tuttle v. Dobbs Tire and Auto Centers*,
   590 S.W.3d 307 (Mo. 2019) ................................................................. 10

*Watson v. Fraternal Order of Eagles*,
   915 F.2d 235 (6th Cir. 1990) ................................................................. 10

## **Statutes**

28 U.S.C. §1367............................................................................................ 6

42 U.S.C. §1981........................................................................................ 1, 9

42 U.S.C. § 2000e ......................................................................................... 1

42 U.S.C. § 2000e-2(a)(1) ........................................................................... 13

42 U.S.C. § 2000e-2(a)(2) ........................................................................... 13

42 U.S.C. § 2000e-2(d) ............................................................................... 14

42 U.S.C. § 2000e-3(b) ................................................................................................ 15

42 U.S.C. § 2000e-6(e) .................................................................................................. 9

42 U.S.C. §2000e-5(b) ................................................................................................... 9

42 U.S.C. § 2000e-5(f)(1) .......................................................................................... 8, 9

Mo. Const. Art. III, § 37(f) .......................................................................................... 12

Missouri Human Rights Act, § 213.010, RSMo. ........................................................... 1

§ 213.055.1(1)(a), RSMo ............................................................................................. 13

§ 213.055.1(1)(b), RSMo ............................................................................................. 13

§ 213.055.1(2), RSMo .................................................................................................. 14

§ 213.055.1(3), RSMo .................................................................................................. 15

§ 213.070.1(1), RSMo .................................................................................................. 15

§ 213.126, RSMo ................................................................................................... 10, 11

§ 213.126.1, RSMo ...................................................................................................... 10

§ 313.255, RSMo .......................................................................................................... 12

§ 620.2020, RSMo ........................................................................................................ 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 6, 15

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 4, 6, 15

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 8, 15

## INTRODUCTION

On behalf of the State of Missouri, the Attorney General brings this action in an attempt to transmute Starbucks' lawful initiatives into unlawful discrimination based wholly on speculation. However, the law has not changed, and, in accordance with all relevant laws, Starbucks' long-standing policies and programs have always prohibited all discrimination. Starbucks' policies are, and always have been, inclusive, fair, and designed to ensure all employment decisions are based on merit, every time. There is nothing illegal about striving to create a culture of belonging, where every employee feels respected. And, no factual allegation in the Complaint suggests otherwise.

But the Court need not delve into the details of Starbucks' initiatives because the Complaint is procedurally and substantively defective. Nowhere in the nearly 60-page Complaint does the Attorney General identify any alleged conduct in Missouri or any purported harm to a Missourian or other impact in the State from Starbucks' programs and policies. Instead, the Complaint attacks five Starbucks initiatives: (i) aspirational representation goals, (ii) executive compensation (iii) mentorship programs, (iv) partner networks, and (v) participation in the Board Diversity Action Alliance ("BDAA"). Relying on conclusory allegations, the Complaint then asserts ten counts of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and the Missouri Human Rights Act, § 213.010, *et seq.*, RSMo. ("MHRA"). But the Complaint fails under practically every measure: this Court lacks personal jurisdiction over Starbucks, the Attorney General lacks standing, and the Complaint fails to plead any plausible claims. The Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Starbucks is committed to creating opportunities for every partner, and this commitment is

consistently reiterated in the public sources cited in the Complaint.[1] Starbucks' programs are open to all, and its hiring practices are fair and designed to select the best candidate for every job.

## I. Starbucks' Aspirational Representation Goals

In October 2020, Starbucks set a U.S.-wide (not Missouri specific) aspirational goal to expand opportunities for everyone and meaningfully improve diversity among U.S. partners (employees).[2] (Compl. ¶¶ 85, 89, 104-106). The Complaint does not allege any information about the demographics of Starbucks' Missouri partners, either before the goals took effect, or after they expired, as planned in September 2024, at the end of Starbucks' 2024 fiscal year. Nor does the Complaint identify how Missouri citizens were allegedly harmed by the goals.

## II. Starbucks' Senior Executive Incentive Compensation Plans

Starbucks has two incentive compensation plans for U.S.-based senior leaders—the Annual Incentive Bonus Plan ("Bonus Plan") and the Long-Term Leadership Stock Plan ("LSP"). (*Id.* ¶ 115). The current Bonus Plan, which has been in place since October 2023 (FY24), ties 75% of each eligible executive's bonus to business performance and 25% "to individual performance." (*Id*. ¶¶ 175-76); 2025 Proxy at 63 (cited Compl. ¶ 182 n.103). Individual performance is assessed based on several factors, one of which is an enterprise-wide (not executive-specific) "belonging" goal that benefits all Starbucks partners, not just minorities or women. (Compl. ¶ 177), 2024 Proxy at 99. Prior Bonus Plans also relied heavily on business performance metrics and rewarded leaders for creating a culture of inclusion and belonging.[3] 2024 Proxy at 60; 2023 Proxy at 51; 2022 Proxy at 65. The Complaint alleges no impact from the Bonus Plans in Missouri or on any Missourian.

---

[1] *See* 2021 Proxy at 14 (cited Compl. ¶ 103 n.42); 2022 Proxy at 17 (cited Compl. ¶ 84 n.23); 2024 Proxy at 99 (cited Compl. ¶ 87 n.26). In ruling on a motion to dismiss, the Court may consider the pleadings and attached exhibits, materials embraced by the pleadings, and matters of public record. *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

[2] *See* 2021 Annual Report at 3 (cited Compl. ¶ 104 n.43); 2021 ESG at 50 (cited Compl. ¶ 104 n.43).

[3] The Bonus Plan has never been linked to Starbucks' aspirational representation goals. The FY 2021-2023 Bonus Plans included a combination of "people" factors as part of the individual-performance consideration. These

As part of the LSP, senior leaders are granted performance-based restricted stock units that vest at the end of a three-year period. 2025 Proxy at 55. The current LSP values those stock units based solely on performance driven business metrics. *Id*. at 64. Prior LSPs also based the stock units on business metrics and included a potential modifier based on achieving a small U.S. increase in minority representation in management over the vesting period, along with other modifiers based on business performance. *E.g.*, 2024 Proxy at 68, 75; 2023 Proxy at 53. The Complaint alleges no impact in Missouri or on any Missourian from the LSP.

### III. Starbucks' Mentorship Programs and Partner Networks

Starbucks launched a mentorship program in 2021, which originally paired mentees at the director level with mentors in "senior leadership" (Compl. ¶¶ 189, 191-92) and has been expanded year over year (*Id.* ¶¶ 197, 199). Starbucks' 2024 Annual Report makes clear that the program is "available to all partners" with no eligibility restrictions (and has been since at least 2023).[4] Starbucks' legal department has maintained a Diversity Mentorship Program for "junior attorneys from diverse backgrounds." (*Id.* ¶ 194). This program provides mentorship by Starbucks' in-house lawyers to *outside attorneys* (not employed by Starbucks) who are newly entering the profession and who belong to a minority bar association or any affinity group, such as military veterans. (*Id.* ¶ 194 n.111 (citing website describing program)). Finally, Starbucks has Partner Networks, which "are partner-led groups that bring together people with shared identities and experiences, along with allies." (*Id.* ¶ 201). "Partners of represented and underrepresented groups are not only allowed

---

included mentorship participation, inclusive leadership, and a BIPOC retention rate and were valued with several other individual and business performance factors, thus receiving fractional weight overall. 2024 Proxy at 60; 2023 Proxy at 41 (cited Compl. ¶ 131 n.62); 2022 Proxy at 65.

[4] *2024 Annual Report (Form 10-K)*, STARBUCKS 4 (Nov. 20, 2024), https://s203.q4cdn.com/326826266/files/doc_financials/2024/ar/Starbucks-Fiscal-2024-Annual-Report.pdf; *Belonging at Starbucks*, https://about.starbucks.com/belonging-at-starbucks/ (website cited Compl. ¶ 200 n.114). Starbucks asks that the Court take judicial notice of the 2024 Annual Report as a "matter[] of public record." *Illig*, 652 F.3d at 976. This is particularly fitting given the Complaint's reliance on Starbucks' Annual Reports from years 2021-23. (Compl. ¶¶ 93 n.32, 110 n.48, 197 n.112).

but encouraged to participate fully" in the Partner Networks (*Id.* ¶ 224), which are open to all partners. The Complaint fails to allege any negative impact in Missouri or on any Missourian from any of the referenced mentorship programs or the Partner Networks.

**IV. Starbucks' Participation in the BDAA**

In October 2020, Starbucks joined the BDAA and committed to having at least one Black director on its board, disclosing directors' race and ethnicity, and reporting on diversity measures. (*Id.* ¶¶ 229, 234). The Complaint does not allege the racial or ethnic composition of Starbucks' board before it joined the BDAA, but it alleges that Starbucks had two Black directors in January 2021, one from 2022-2024, and no Black directors as of January 2025. (*Id.* ¶¶ 245, 249, 252, 256, 260). The Complaint does not allege anyone has been harmed by Starbucks' BDAA participation.

<u>**ARGUMENT**</u>

**I. This Court Lacks Personal Jurisdiction Over Starbucks.**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Attorney General "bears the burden to show that jurisdiction exists," *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014), and must plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state," *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (quotation omitted). The Attorney General fails to do so.

This Court may exercise personal jurisdiction over Starbucks, a foreign defendant, "only to the extent permitted by [Missouri]'s long-arm statute and by the Due Process Clause." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citation omitted). Under the Due Process Clause, the existence of personal jurisdiction turns on whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hauled into

4

court there." *Zazzle*, 42 F.4th at 951 (citation omitted). The Supreme Court has recognized two categories of authorized jurisdiction over a foreign defendant: (1) general jurisdiction, which allows a court to decide any claim against the defendant; and (2) specific jurisdiction, which is based on a defendant's particular contacts with the state and allows a court to hear only the narrow class of claims that arise from those contacts. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). The Complaint fails to establish jurisdiction under either category.

*First*, there is no general jurisdiction over Starbucks. General jurisdiction exists where a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation omitted). Typically, this is limited to a corporation's place of incorporation or principal place of business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). As the Attorney General concedes, Starbucks is incorporated in and maintains its principal place of business in Washington. (Compl. ¶ 73). Therefore, Starbucks is not "at home" in Missouri. Instead, the Complaint alleges that Starbucks has consented to general jurisdiction by registering with the Secretary of State, (*id.* ¶ 79), but consent can only serve as a basis for personal jurisdiction *if* state law expressly provides for it. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 127 (2023). Missouri has no such law. Indeed, Missouri jurisprudence is clear that a corporation *does not* consent to "jurisdiction in Missouri over any cause of action" against it "by registering to do business in Missouri and appointing a registered agent." *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 51-52 (Mo. 2017).

*Second*, this Court cannot exercise specific jurisdiction over Starbucks. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlap Tires Operations v. Brown*, 564 U.S. 915, 919 (2011) (quotation omitted). Thus, the Attorney General must plead non-conclusory facts

that identify Starbucks' actions within Missouri from which the State's claims arise. *Miller*, 528 F.3d at 1091-92 ("[C]onclusory allegation[s] [are] not enough to establish personal jurisdiction."). Not one of the Complaint's 336 paragraphs identifies a *single* specific action taken by Starbucks within Missouri, nor does the Complaint allege *any* identifiable impact in the State or on any Missouri resident. The Complaint's allegation of basic business facts (Compl. ¶¶ 46-47, 51-52, 69, 74-75) and conclusory assumption that discrimination occurred in Missouri cannot establish the requisite "affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb*, 582 U.S. at 264 (citation omitted). Thus, Starbucks is not subject to personal jurisdiction in Missouri, and the Complaint should be dismissed under Rule 12(b)(2).

**II. The Attorney General Lacks Article III Standing to Pursue the Alleged Federal Claims.**

The Complaint also should be dismissed under Rule 12(b)(1) because this Court lacks subject-matter jurisdiction: The Attorney General does not have standing to pursue the federal claims under Article III, and the Court cannot then exercise supplemental jurisdiction over the state-law claims, 28 U.S.C. § 1367. The Attorney General bears the burden of establishing, for each claim pled, that Missouri has standing, *i.e.*, a concrete interest at stake sufficient to create an actual controversy between the State and Starbucks. *E.g.*, *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022).

The Attorney General attempts to meet his burden by relying on *parens patriae* standing, which requires the State to assert a quasi-sovereign interest, apart and independent from the private interests of individual residents. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982). Quasi-sovereign interests typically involve broader concerns impacting a State's population, such as nuisances or discriminatory policies that threaten the State's economy. *Id.* at 609 (Puerto Rico had quasi-sovereign interest in remedying discrimination that was based

on the status *as Puerto Ricans* because it stigmatized all Puerto Rico residents and threatened the general economy); *Harrison v Jefferson Parish Sch. Bd.*, 78 F.4th 765, 772-73 (5th Cir. 2023). The injury alleged must impact more than an identifiable group of residents, and a court must assess whether a "sufficiently substantial segment" of the population is affected. *Snapp*, 458 U.S. at 607. It is not enough for a State to allege some violation of federal law potentially impacting some of its residents; the State's own interests must be harmed. *See, e.g.*, *New York v. Holiday Inns, Inc.*, 656 F. Supp. 675, 677-78 (W.D.N.Y. 1984) (Attorney General did not have standing to pursue discrimination claims because private individuals could obtain complete relief); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652-53 (9th Cir. 2017) (no standing where complaint contained no specific allegations regarding statewide impact or extent to which challenged law affected more than an identifiable group).

Here, the Attorney General has alleged no facts regarding an asserted quasi-sovereign interest independent from that of private residents. Instead, the Attorney General relies on conclusory allegations speculating that Starbucks' initiatives have led to discriminatory employment decisions, and that Missouri has an interest in protecting its residents from unlawful discrimination and in securing the benefits of federal law. (Compl. ¶¶ 30, 32, 35, 40, 42). Even leaving aside the failure to allege *any* discriminatory employment decision in Missouri, the Complaint does not allege non-conclusory facts suggesting that Missouri has an interest beyond those of private individuals allegedly subjected to the discrimination, who would be capable of pursuing their own claims. Nor has the Attorney General alleged facts that plausibly could support an inference that a "substantial segment" of Missouri's population has been impacted. The Attorney General's mere speculation and general interest in enforcing federal law are not enough to create an actual controversy that supports Article III standing. *See Ark. Right to Life State Pol.*

*Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998) (conclusory allegations insufficient to create standing); *Holiday Inns*, 656 F. Supp. at 677-78.

### III. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79. Rather, a plaintiff must assert factual allegations that are "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and develop a plausible argument as to why the defendant's conduct violated the law, *see Clobes v. 3M Co.*, 106 F.4th 803, 808 (8th Cir. 2024). Here, the Attorney General fails to allege any viable claims because (1) he is not authorized to bring Title VII or Section 1981 claims; (2) he has not asserted a claim within his authority under the MHRA; and (3) he has not alleged facts that could plausibly suggest a violation of any statute.

### A. The Attorney General Is Not Authorized to Bring Title VII Claims.

Under Title VII, Congress crafted a comprehensive enforcement scheme, delineating exactly *who* is authorized to bring suit and *how* such a suit may be brought—this action by Missouri's Attorney General does not satisfy either. Section 706(f) authorizes civil actions by (i) the EEOC against private employers; (ii) the U.S. Attorney General against government employers; and (iii) "aggrieved" persons against both private and public employers. § 706(f)(1) (42 U.S.C. § 2000e-5(f)(1)). Plainly, the Missouri Attorney General is not the EEOC or the U.S. Attorney General. Nor is he an "aggrieved" person, as that term includes only individuals who were personally harmed, not government entities seeking to sue on behalf of unidentified citizens.

*See, id.* (contrasting "persons aggrieved" with government entities granted enforcement authority); *State ex rel. Anheuser-Busch, LLC v. Moriarty*, 589 S.W.3d 567, 574 (Mo. 2019) (Draper, J., concurring) (discussing same requirement in MHRA and stating that "[c]ertainly the attorney general cannot demonstrate he or she is 'aggrieved' or suffered 'an adverse impact'").

Further, even if the Missouri Attorney General was one of the parties authorized to pursue Title VII claims, the statute sets forth specific procedural requirements that must be exhausted before a lawsuit is filed. A Title VII civil action may only be brought against a private employer *after* the EEOC: (a) receives or files a charge; (b) serves notice of the charge on the employer; (c) determines whether there is "reasonable cause" to believe an unlawful employment practice has occurred or issues a notice of right to sue; and (d) if the EEOC finds cause, attempts to end the unlawful practice "through confidential, informal conciliation methods." §§ 706(b), (f)(1) (42 U.S.C. §§ 2000e-5(b), (f)(1)); § 707(e) (42 U.S.C. § 2000e-6(e)) (authorizing pattern-or-practice claims after exhausting same procedural requirements). None of these steps have been followed here, and the Attorney General's attempt to unilaterally insert himself into Title VII's enforcement scheme and bypass the statute's comprehensive procedural requirements must be rejected.

### B. The Attorney General Is Not Authorized to Bring § 1981 Claims.

The Attorney General also has no statutory authority to enforce § 1981. Section 1981 provides that all people "shall have the same right… to make and enforce contracts… as is enjoyed by white citizens …." and authorizes a claim when racial discrimination is a "but-for" cause of the loss of legally-protected contractual rights. 42 U.S.C. § 1981; *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). The statute, however, only authorizes an action by a plaintiff who "has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). It does not authorize derivative

claims, *id.*; *FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 621 (8th Cir. 2019), and courts have held that even the U.S. Attorney General does not have the right to sue under § 1981. *See Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 241 (6th Cir. 1990). The Attorney General has not—and cannot—allege that Missouri has any purportedly impaired contractual rights, and the State cannot claim a greater enforcement power under § 1981 than that given to the United States.

### C. The MHRA Claims Are Not Within the Scope of the Attorney General's Statutory Authority.

The Attorney General relies on his authority under § 213.126, RSMo., as the basis for all of the alleged MHRA claims. (Compl. ¶ 262, Counts 2-3, 5, 7, 9). That section authorizes an attorney general to file a civil action for "preventive relief," when he has a "reasonable cause to believe" a defendant "is engaged in a pattern or practice" of violating the MHRA. § 213.126.1. To do so, the Attorney General must file a complaint "setting forth the facts" with an "appropriate state court."  In addition to the obvious fact that the Attorney General did not file this action in "an appropriate state court," his MHRA claims all fail because he has not "set forth" facts that plausibly suggest an adverse impact in Missouri or a pattern or practice of ongoing MHRA violations.

As an initial matter, the Complaint does not allege the requisite connection between Missouri and any impact of the alleged conduct. In *Tuttle v. Dobbs Tire & Auto Centers*, 590 S.W.3d 307 (Mo. 2019), the Missouri Supreme Court held that the MHRA only authorizes claims for discrimination causing an adverse impact in Missouri because the statute cannot be applied extraterritorially. *Id.* at 310-11. As discussed, the Complaint does not allege facts indicating that any Missourian has been harmed by the alleged discrimination or even that any allegedly discriminatory conduct has occurred in Missouri. The Attorney General's conclusory allegation that Starbucks' policies harm "many Missourians" (Compl. ¶ 56) is devoid of any supporting facts and cannot plead the requisite Missouri connection to state a plausible claim under the MHRA.

The Attorney General's claims also fail because he has not alleged facts that could plausibly support an inference that Starbucks is engaging in an ongoing pattern or practice of unlawful discrimination.[5] To do so, the Complaint must allege facts indicating that Starbucks "regularly and purposefully treat[s] members of the protected group less favorably," *i.e.*, that "discrimination [is] the company's standard operating procedure." *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999) (cleaned up).[6] The Complaint fails to a identify *any* discriminatory employment actions in Missouri, any Missourian harmed by Starbucks' conduct, or any statistical disparity that could support an inference of discrimination in Missouri—much less the type of pervasive discrimination necessary to show a pattern or practice. *Cf. Morgan v. United Parcel Serv.*, 380 F.3d 459, 463 (8th Cir. 2004) (pattern-or-practice allegations typically involve statistical evidence of disparities). Instead, the Attorney General simply alleges that Starbucks adopted the initiatives, mischaracterizes those initiatives, and then speculates that they led to unlawful discrimination. (Compl. ¶¶ 113, 171, 214, 226, 262-63). Such conclusory allegations and conjecture are insufficient to allege an actionable pattern or practice.

Moreover, the mere existence of the alleged diversity initiatives cannot plausibly suggest that intentional discrimination is Starbucks' standard operating procedure.[7] Diversity and inclusion goals are not *per se* unlawful. *E.g.*, *McCormick v. Gasper*, 2022 WL 16586621, *4 (6th Cir. Nov. 1, 2022) (policy stating that percentage of positions should be filled by minorities/women did not establish facially discriminatory quotas); *Dzibela v. BlackRock Inc.*, 2024 WL 4349813, *6 (D.N.J. Sept. 30, 2024) (dismissing claims because conclusory allegations of diversity targets failed to

---

[5] It is not clear whether the Attorney General is also relying on a pattern-or-practice theory of intentional discrimination under federal law. However, to the extent the Complaint attempts to do so, the arguments below apply with equal force to those claims.

[6] In interpreting the MHRA, Missouri courts rely on federal employment-discrimination case law if it is consistent with Missouri law. *Barrett v. Cole Cnty.*, 687 S.W.3d 685, 697 (Mo. App. 2024).

[7] Despite the Attorney General's focus on past policies, only the current versions are relevant because § 213.126 only authorizes actions for "preventive relief" to stop *ongoing* patterns or practices of MHRA violations.

raise plausible inference of discrimination). Indeed, several government programs adopt similar diversity targets as a condition of the program. Mo. Const. Art. III, § 37(f) (state bond program); § 620.2020, RSMo. (Missouri Works program); § 313.255, RSMo. (lottery licenses). The fact that Starbucks adopted company-wide diversity or belonging initiatives does not support the "broad, and otherwise unsubstantiated leap" that they were the "catalyst" for unlawful employment decisions. *Mangold v. PECO Energy*, 2021 WL 6072818, *17 (E.D. Pa. Dec. 23, 2021).

Similarly, the Complaint fails to allege facts suggesting that the internal mentorship program or Partner Networks create a pattern or practice of unlawful discrimination. Both programs are open to all Starbucks' partners. And, even under the outdated versions highlighted in the Complaint, the Attorney General does not allege facts indicating that either policy negatively impacts an identifiable term or condition of employment for Missouri residents on a regular basis.

**D. The "Counts" in the Complaint Fail to State Any Facially Plausible Claim.**

Finally, the Attorney General fails to allege a viable claim of intentional discrimination under the Complaint's individual "counts." Instead, each count merely recites the elements of the cause of action and summarily concludes that a violation has occurred. Indeed, the Attorney General does not even identify which protected class was allegedly harmed or, for that matter, who (if anyone) was advantaged.

### 1. The Attorney General Has Not Alleged Any Harm to an Identifiable Employment Condition or Opportunity. (Counts 1, 2, 6, 7, 10)

Counts 1, 2, 6, 7 and 10 allege "unlawful hiring, firing, and discriminatory practices" (Counts 1 and 2), "unlawful limiting, segregation, or classification" (Counts 6 and 7), and "discriminatory contracting impairment" (Count 10). The statutory provisions cited in each of these counts require a showing that the alleged discrimination caused a specific, concrete harm to an identifiable term or condition of employment or an employment opportunity. *See Cole v. Grp.*

*Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024). Specifically, under § 703(a)(1) of Title VII (Count 1), the MHRA counterpart (Count 2), and § 1981 (Count 10), a plaintiff must plead that the plaintiff was not hired, or was discharged, or discriminated against with respect to "compensation, terms, conditions, or privileges of employment" because of a protected characteristic. 42 U.S.C. § 2000e-2(a)(1); § 213.055.1(1)(a), RSMo.; *Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1052 (8th Cir. 2024) (Section 1981 claim analyzed under same framework as Title VII). To satisfy this requirement, the Complaint must allege at least "'some harm,'" *i.e.*, "a disadvantageous change" to "'an identifiable term or condition of employment.'" *Cole*, 105 F.4th at 1114 (quoting *Muldrow v. City of St. Louis*, *Missouri*, 601 U.S. 346, 354–55 (2024)); *Smith v. Gen. Motors*, 2023 WL 1765207, *6 (E.D. Mo. Feb. 3, 2023) (an MHRA plaintiff must show a "significant change in employment status") (citation omitted). Similarly, to state a claim under § 703(a)(2) of Title VII (Count 6) or the MHRA counterpart (Count 7), a plaintiff must show the employer limited, segregated, or classified employees in a way "which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" because of a protected characteristic. 42 U.S.C. § 2000e-2(a)(2); § 213.055.1(1)(b), RSMo.; *EEOC v. AutoZone, Inc.*, 860 F.3d 564, 568-69 (7th Cir. 2017).

Here, the Attorney General pleads only conclusory allegations. The Complaint does not allege any facts that could plausibly support an inference that Starbucks' diversity and inclusion goals or programs have negatively affected *any* term or condition of employment or employment opportunity in Missouri. And, to the extent the Attorney General relies on Starbucks' alleged commitment to Board diversity to state a § 1981 claim (Compl. ¶¶ 229-61), that also fails. The Complaint does not allege that any particular individual was chosen or not chosen to be on Starbucks's board because of Starbucks' goal to have a black director as part of the BDAA, and,

indeed, as the Complaint acknowledges, Starbucks currently does not have a black director. (*Id.* ¶ 260).

### 2. The Attorney General Has Not Alleged an Unlawful Training Program (Counts 4-5).

Counts 4 and 5 allege "unlawful training programs" under Title VII and the MHRA. Both laws prohibit an employer from discriminating based on a protected characteristic in the admission to an "apprenticeship or other training" program. § 703(d) (42 U.S.C. §2000e-2(d)); § 213.055.1(2), RSMo. In both counts, the Attorney General merely recites the basic prohibition (Compl. ¶¶ 303, 308), states that Starbucks discriminated on the basis of protected characteristics (*id.* ¶¶ 304, 309) and that sexual-orientation discrimination is prohibited (*id.* ¶¶ 305, 310), and asserts that Starbucks violated the law (*id.* ¶¶ 306, 311). The Complaint does not identify any discriminatory training program, how such a program harmed protected classes, or which classes were harmed. It is not the province of this Court "to divine the litigant's intent and create claims that are not clearly raised …." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citation omitted).

The rest of the Complaint fares no better. At most, the Attorney General identifies two mentorship programs and Partner Networks, voluntary employee associations—none of which is an apprenticeship or training program or unlawfully discriminatory. First, the Diversity Mentorship Program provides mentoring to *private-practice* attorneys who are not employed by Starbucks; as such, the program cannot violate Title VII or the MHRA, which only apply in the employment context. Second, the internal mentorship program initially started for BIPOC directors was designed to build a sense of belonging, not to provide training, (Compl. ¶¶ 190-91, 199), and, in any event, it has been expanded to include all Starbucks' partners.[8] Finally, to the extent the

---

[8] 2024 Annual Report, *supra* n.4; https://about.starbucks.com/belonging-at-starbucks/, *supra* n.4.

Attorney General suggests Partner Networks fall within this provision, the Complaint fails to allege any facts linking the groups (which are open to all) with any discriminatory training opportunities.

### 3. The Attorney General Has Not Alleged an Unlawful Publication (Counts 8-9).

Counts 8 and 9 allege "Unlawful Printing or Circulation" under Title VII and the MHRA. Although the language varies slightly, both statutes prohibit the publication of statements regarding prospective employment opportunities that express a limitation or specification based on a protected characteristic. *See* § 704(b) (42 U.S.C. § 2000e-3(b)); § 213.055.1(3), RSMo. The Complaint does not even attempt to connect these counts to any of the challenged initiatives, nor could it since those policies have nothing to do with advertising prospective employment positions.

### 4. The Complaint Fails to Allege an MHRA Aiding and Abetting Claim (Count 3).

Finally, Count 3 purports to bring a claim for aiding and abetting under the MHRA. *See* § 213.070.1(1), RSMo. However, the Complaint attacks only Starbucks' conduct, and, obviously, Starbucks cannot aid and abet itself. "Aiding and abetting" liability cannot stand. *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 369 (Mo. 2024) (an employer is liable under the MHRA for aiding and abetting when it "knows that [an]other's conduct constitutes a [violation of the MHRA] and gives substantial assistance or encouragement to the other") (citation omitted).

## CONCLUSION

For the reasons stated above, Starbucks respectfully requests that the Court dismiss the Complaint in its entirety for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and (2), or alternatively, under Fed. R. Civ. P. 12(b)(6) for the failure to state a claim.

Dated: April 7, 2025          Respectfully submitted,

**DOWD BENNETT LLP**

/s/ *James F. Bennett*
James F. Bennett, 46826MO
jbennett@dowdbennett.com
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)

**ORRICK HERRINGTON & SUTCLIFFE LLP**
/s/ *Esther G. Lander*
*(pro hac vice* admission pending*)*
elander@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 339-8529 (telephone)

*Counsel for Defendant Starbucks Corp.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 7, 2025, a true and correct copy of the foregoing was electronically filed using the Court's electronic CM/ECF filing system for service on counsel of record.


/s/ *James F. Bennett*

Attorney for Defendant